**UNITED STATES of America,**
**Plaintiff,**

v.

**Waajid PIERCE, Defendant.**

**No. CR. 2:99–00157.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 29, 1999.

**662**

Monica K. Schwartz, Assistant U.S. Attorney, S.D.W.Va., Charleston, WV, for plaintiff.

George H. Lancaster, Jr., Assistant Federal Public Defender, S.D.W.Va., Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Defendant's motions to suppress and to dismiss. The Court heard argument and testimony previously and made certain findings of fact and conclusions of law on the record relating to Defendant's motion to suppress. Those findings and conclusions are adequately set forth in the Court's bench ruling and are incorporated herein by reference. In sum, the Court **DENIED** the motion to suppress.

The Court deferred ruling on the motion to dismiss because of the need for further study. Having now fully considered the arguments of counsel, the testimony and the briefing, the Court **DENIES** the motion.

### I. FACTUAL BACKGROUND

Pierce was arrested on April 9, 1997 arising out of his possession of marijuana and cocaine base. He was charged in state court with controlled substances offenses. The charges were dismissed as a result of an agreement with the State of West Virginia. Pierce agreed to leave West Virginia for a period of one year and to forfeit certain items.

At some later time, law enforcement authorities approached the Government in an attempt to have federal charges brought against Pierce. On March 19, 1998 a federal criminal complaint and arrest warrant issued based upon the April 1997 arrest.

In January 1999 one of the officers involved in the April 1997 arrest became aware Pierce was, at least for a brief period, in Charleston, because he viewed Pierce on a surveillance film. Pierce, however, was not taken into custody on the federal complaint and warrant until August 16, 1999.

■ Pierce now seeks dismissal of the instant charges, asserting the delays of (1) seventeen (17) months between the criminal complaint and his arrest; and (2) twenty-eight (28) months between his state and

federal arrests violated his Sixth Amendment right to a speedy trial.[1]

## II. DISCUSSION

The Sixth Amendment to the United States Constitution provides "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. The Supreme Court discussed the application of the speedy trial clause in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In *Doggett*, the Supreme Court held a delay of eight and one-half years between Doggett's indictment and arrest violated the Sixth Amendment right. The Supreme Court recognized the relevance of four separate enquiries:

> [1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result.

*Id.* at 651, 112 S.Ct. 2686.

■ First, the Court assumes, without deciding, that Pierce has demonstrated the Amendment's protections were triggered by the "official accusation" of the criminal complaint and arrest warrant.[2] It is clear Pierce has also satisfied the "threshold requirement" of showing that the delay here was "uncommonly long." *United States v. Grimmond*, 137 F.3d 823, 827 (4th Cir.1998). As noted in *Grimmond*, "*Doggett* ... suggested in dicta that a delay over one year is presumptively prejudicial." *Id.* at 828. The Court notes, however, the Government's seventeen-month delay exceeds the one-year time period by only five months. Having concluded the threshold is met, the Court next considers the remaining three factors to determine whether the delay violated the right.

■ The second factor examines relative responsibility and the government's excuse for delay. The excuse can be either valid, improper or neutral. An improper reason weighs heavily for the Defendant, while a valid reason weighs for the Government; a neutral reason weighs slightly against the Government because "the ultimate responsibility for such [de-

---

1. The second period of twenty-eight months would seem inappropriate for consideration, given the trigger point for the Amendment's guarantee is a federal arrest, indictment, or other official accusation:

   > In cases where federal and state charges are filed, arrest by state authorities for a state offense does not trigger federal constitutional speedy trial provisions against the federal government because courts will not interfere with the prosecutor's discretion regarding when (or whether) to seek an indictment. *See U.S. v. Marler*, 756 F.2d 206, 211 (1st Cir.1985) (Sixth Amendment speedy trial right did not attach when state arrested and federal government subsequently indicted on federal civil rights charges because court will not interfere with separate prosecutorial functions of different sovereigns); *U.S. v. Fuzer*, 18 F.3d 517, 520 (7th Cir.1994) (state and federal prosecutions for same offense may be simultaneous; however, prosecutor has discretion to drop federal prosecution pending state court result and proceed with federal prosecution if inadequate results obtained

   in state court); *U.S. v. Garner*, 32 F.3d 1305, 1309 (8th Cir.1994) (arrest on state charges does not trigger speedy trial protection for subsequent federal charge); *U.S. v. Gomez*, 67 F.3d 1515, 1521 (10th Cir.1995) (same), *cert. denied*, 516 U.S. 1060, 116 S.Ct. 737, 133 L.Ed.2d 687 (1996).

   Joseph Wylie, *Speedy Trial*, 86 Geo.L.J. 1493, 1496 n. 1263 (1998); *see United States v. Thomas*, 55 F.3d 144, 148 (4th Cir.1995) (quoting *Doggett v. United States*, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). The Court's approach is consistent with the notion of dual sovereignty, circuit precedent and other consistent legal principles.

2. Recent precedent from our Court of Appeals suggests Pierce has a significant uphill battle on this threshold question. *See Jones v. Angelone*, 94 F.3d 900, 906 n. 6 (4th Cir.1996) ("the speedy trial right does not apply to Jones' preindictment delay because that right does not attach until the defendant has been indicted or arrested."); *Thomas*, 55 F.3d at 149 n. 4.

lays] must rest with the government rather than with the defendant." *Grimmond,* 137 F.3d at 828 (quoting *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

Although the Government was placed on notice that Pierce was in the area in January 1999, he admitted to officers during the August 1999 arrest he just recently returned to the area after an absence of unspecified duration.[3] Further, while payments were made on a fine obligation incurred by Pierce in Charleston during the relevant period, those payments could have been made as easily by someone on his behalf. The Court finds this factor weighs slightly in the Government's favor.

The third factor, invocation of the speedy trial right, weighs in Defendant's favor. He was indicted September 1, 1999. He received discovery information from the Government sometime in October, and the motion to dismiss was filed October 28, 1999. In sum, he asserted the right seasonably.

Finally, the Court examines the prejudice to the Defendant, if any. Such a showing may be important, given the bare five months by which the delay in this case exceeds the threshold and the fact he has not shown the remaining factors weigh heavily against the government.

Prejudice is assessed in light of the interests protected by the right. "These interests include: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *Grimmond,* 137 F.3d at 829.

Pierce has made no significant showing on the first two elements of prejudice. Regarding the third, he asserts his girlfriend Oyema Lebron, present in the apartment during the search, is now missing; Pierce has not, however, detailed what efforts he has made to locate her, nor did he explain how the absence of her testimony, assuming she would not have appeared prior to trial, would have prejudiced his case. *See United States v. Clark,* 83 F.3d 1350, 1354 (11th Cir.1996) ("At the hearing, the district court heard testimony from the private detective allegedly hired by Clark to locate the two Government witnesses. This testimony was both unclear and unpersuasive, and Clark's mere conclusory allegations of impairment are insufficient to constitute proof of actual prejudice.").

More importantly, however, Ms. Lebron's absence is not directly attributable to the delay. She appears to have been in the Charleston area on the date of Pierce's August 1999 arrest. In his grand jury testimony, Officer Napier stated as follows when asked about Ms. Lebron's whereabouts:

> She left the state from what—the information I got *shortly after this arrest,* and I was unable to contact her.

Def.'s ex. 1 (emphasis added). Under the circumstances, the Court believes this factor weighs in favor of the Government.

To prevail, Pierce has to establish " 'that on balance, [the] four separate factors weigh in his favor.' " *Grimmond,* 137 F.3d at 827 (quoting *Thomas,* 55 F.3d at 148). He has failed to do so. Accordingly, the Court **DENIES** the motion to dismiss.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel, the Marshal for the District and the Probation Office of this Court.

---

**3.** Pierce raised several reasons why the government should be held accountable for the delay in addition to Pierce's appearance on the surveillance tape. By example, Pierce pled guilty to certain motor vehicle offenses in Charleston Municipal Court on January 20, 1999. The reasons, however, are unpersuasive.