# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40765
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JUAN ANGULO MORA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:14-CR-362-1

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Juan Angulo Mora (Angulo) was convicted of one count of bulk cash smuggling in violation of 31 U.S.C. § 5332 and received a within-guidelines sentence of 18 months of imprisonment and a three-year term of supervised release. Angulo challenges the $160,000 forfeiture order, arguing that the district court erred by rejecting his argument that the U.S.S.G. § 2S1.3(b)(3)

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

safe harbor provision applied and by concluding that the forfeiture did not violate the Excessive Fines Clause of the Eighth Amendment.

We review the district court's interpretation or application of the Guidelines de novo and its factual findings for clear error. *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Under § 2S1.3(b)(3), the offense level will be decreased to six if: (1) "subsection (a)(2) applies and subsections (b)(1) and (b)(2) do not apply;" (2) Angulo "did not act with reckless disregard of the source of the funds; (3) "the funds were the proceeds of lawful activity; and" (4) "the funds were to be used for a lawful purpose." Angulo's total offense level was 15, which included a two-level increase pursuant to § 2S1.3(b)(1)(B) because the offense involved bulk cash smuggling. The application of the § 2S1.3(b)(1)(B) enhancement means that the safe harbor provision cannot apply. *See* § 2S1.3(b)(3)(A). As Angulo does not challenge the application of the § 2S1.3(b)(1)(B) enhancement, he cannot demonstrate that the district court erred in denying his request for a reduction under § 2S1.3(b)(3). *See Cisneros-Gutierrez*, 517 F.3d at 764; *United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) (concluding that the failure to brief an argument sufficiently results in its waiver).

"[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Among the factors that the Court considered in *Bajakajian* in making the proportionality determination were: (a) the essence of the defendant's crime and its relationship to other criminal activity; (b) whether the defendant was within the class of people for whom the statute of conviction was principally designed; (c) the maximum sentence, including the fine that could have been imposed; and (d) the nature of the harm resulting from the defendant's conduct. *See id.* at 337-39; *see also United*

*States v. Wallace*, 389 F.3d 483, 485-88 (5th Cir. 2004). We review de novo the district court's proportionality determination and for clear error the district court's factual findings. *Bajakajian*, 524 U.S. at 336-37 & n.10; *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir. 1999).

With respect to the first *Bajakajian* factor, the essence of Angulo's crime was bulk cash smuggling in violation of § 5332(a), not a reporting offense like the defendant in *Bajakajian,* and the $160,000 at issue was the instrumentality of his crime. *See* USA PATRIOT Act, Pub. L. No. 107—56, § 371(a)(6), 115 Stat. 272 (2001). Congress has stated that cash smuggling is related to other criminal activity, as it "is one of the most reliable warning signs of drug trafficking, terrorism, money laundering, racketeering, tax evasion and similar crimes." PATRIOT ACT § 371(a)(3), 115 Stat. 272.

As to the second *Bajakajian* factor, the district court found that Angulo was within the class of individuals targeted by the statute. Emphasizing the manner of Angulo's transportation of the money, the district court stated that Angulo fit the profile of a bulk cash courier. The district court discounted Angulo's assertion that the money was his life savings which he withdrew over time, noting that the series of $100 bills found dated back only to 1996; that Angulo's claim of savings was somewhat fantastic given that he claimed from seven to nine dependents on his tax returns; and the fact that Angulo had a serious drinking problem. Other testimony from the forfeiture hearing supported the district court's conclusion that the money was not Angulo's life savings. Angulo had a negative monthly cash flow and owed medical, child support, and credit card debts. Further, in contravention of his claim that he withdrew his paychecks after they were deposited, Angulo had two receipts in his possession demonstrating that he had deposited a total of $14,300 in September 2013 and January 2014, but possessed no bank documents

No. 15-40765

indicating the money was subsequently withdrawn.  The district court did not clearly err in making the finding that Angulo was within the class of individuals targeted by the statute.  *See Wyly*, 193 F.3d at 393.

As to the third *Bajakajian* factor, the maximum statutory fine that could be imposed was $250,000, 31 U.S.C. § 5322(a), and the maximum Guidelines fine for a total offense level of 15 was $40,000, U.S.S.G. § 5E1.2(c)(3) (2014).  While the $160,000 forfeited was four times the maximum guidelines fine, the amount forfeited was well within the statutory maximum fine of $250,000.  *See* § 5E1.2(c)(3); § 5322(a).  We have cited with approval an Eleventh Circuit case which stated that "if the value of the forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."  *Wallace*, 389 F.3d at 486 (quoting *United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1309 (11th Cir. 1999)).  Angulo has not rebutted this presumption.  *See id.* at 486-88.  Finally, as to the fourth *Bajakajian* factor, the nature of the harm caused by Angulo's conduct, Congress has emphasized the seriousness of bulk cash smuggling and its relationship to other types of criminal activity such as terrorism, tax evasion, money laundering, and drug trafficking.  *See* PATRIOT ACT § 371(a)(5), 115 Stat. 272.

The district court did not clearly err in its factual findings with respect to the proportionality determination, nor did the district court err in concluding that the forfeiture was not grossly disproportionate.  *See Bajakajian*, 524 U.S. at 337 n.10; *Wyly*, 193 F.3d at 303.

AFFIRMED.